The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

GREG WELDON PHILLIPS,

Defendant.

NO.  2:14-cr-00369-RAJ

ORDER ON DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE

**I. BACKGROUND**

This matter comes before the Court on Defendant Greg Weldon Phillips' motion for compassionate release. Dkt. 50.  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

This matter arises out of an investigation by federal agents with the United States Department of Homeland Security and United States Immigration and Customs Enforcement.  In January 2014, investigating agents learned Mr. Phillips was associated with a Yahoo email account from which images and videos depicting child pornography were sent.  The IP address of the email account used to transmit the images and videos was traced to Mr. Phillips' computer.  The investigation ultimately revealed Mr. Phillips' email account was used to send images and videos depicting child pornography to

ORDER  - 1

various recipients and that Mr. Phillips engaged in online chats with others regarding the sexual abuse of minors.

Upon execution of a search warrant on Mr. Phillips' residence, agents discovered approximately 8,000 images and 1,100 videos depicting child pornography on his computer hard drive and associated memory cards.  PSR ¶ 6-9.

On December 17, 2014, Mr. Phillips was indicted on charges of Possession of Child Pornography, Distribution of Child Pornography, and Receipt of Child Pornography.  Dkt. 12.

On May 28, 2015, Mr. Phillips entered pleas of guilty to Possession of Child Pornography and Distribution of Child Pornography.  Dkt. 26.  Mr. Phillips admitted he knowingly possessed 8,000 images and 1,100 videos depicting child pornography and knowingly distributed over 300 images and videos of child pornography with the expectation that he would receive images and videos of child pornography in return. Additionally, Mr. Phillips admitted to engaging in online chats regarding his desire to sexually abuse underage children.  Finally, as part of his plea agreement, he admitted to taking over 1,000 photographs of minor children at a public fountain, with the children often in bathing suits, and posting over 200 images of children in bathing suits on a photograph hosting website known to be used by collectors and traders of child pornography.  Dkt. 26.

On October 30, 2015, this Court sentenced Mr. Phillips to a 108-month term of imprisonment, with 15 years of supervised release to follow.  Dkt. 44.

Mr. Phillips is currently housed at Federal Corrections Institution Seagoville, with a projected release date of August 13, 2022.

On June 10, 2020, Mr. Phillips filed the instant motion for compassionate release, requesting the Court reduce his custodial sentence to time served, with the remainder of his sentence to be served under supervised release with monitoring through home confinement, in a residential reentry center program, or a combination thereof.  Dkt. 50.

ORDER  - 2

1   Mr. Phillips argues that the outbreak of the coronavirus 19 (COVID-19) pandemic,

2   together with Mr. Phillips' age, when combined with the conditions at FCI Seagoville,

3   present extraordinary and compelling reasons to grant compassionate release.  Dkt. 50, 57

4   and 59.

5   Mr. Phillips is currently 63 years old.  He argues that, due to his age, he is at

6   heightened risk of developing complications from COVID-19 should he become infected.

7   He contends the conditions at FCI Seagoville create a high risk of an outbreak of

8   COVID-19, as social distancing is impossible.  Dkt. 50.

9   At the time Mr. Phillips filed his motion there were no confirmed positive cases of

10  COVID-19 at FCI Seagoville among the inmates and one known infected staff member.

11  Dkt. 50.  On July 6, 2020, Mr. Phillips filed a supplemental memorandum indicating that

12  according to the most recent reports from FCI Seagoville there are currently 282 inmates

13  and three staff members who have tested positive for COVID-19 in that facility.  Dkt. 59.

14  Mr. Phillips argues that the Bureau of Prisons (BOP) is unable to adequately

15  manage the pandemic, as evidenced by its failure to prevent this recent outbreak of

16  COVID-19 at FCI Seagoville, particularly given that the facility is overcrowded at 144%

17  capacity.  Mr. Phillips asserts his release to the less risky environment of supervised

18  release on home confinement or in a residential reentry center would protect him from an

19  increased risk of contracting COVID-19 and suffering complications associated with the

20  disease.  Dkt. 50, 57, 59.

21  Mr. Phillips contends he would not pose a danger to the community if released.

22  Dkt. 50.

23  The government responds that because Mr. Phillips has not presented

24  extraordinary and compelling reasons for a reduction in sentence, and because he

25  continues to be a danger to others and to the community, his motion for compassionate

26  release should be denied.  The government points out that Mr. Phillips is in good health

27  and has none of the risk factors, including his age, considered by the Centers for Disease

28  Control (CDC) as placing him at risk of severe illness or death were he to contract

ORDER - 3

COVID-19.  The government indicates that Mr. Phillips, a 63-year-old man with no known health issues, is no more at risk for COVID-19 than anyone else, and that his fear of contracting the virus is speculative and does not constitute grounds for release.  The government argues that if the Court were to find Mr. Phillips has met the criteria of extraordinary and compelling reasons to warrant his release, then every healthy individual who is incarcerated at a BOP facility would qualify for immediate release as well, given the risk to every person in the country, incarcerated or not, of contracting COVID-19.  Dkt. 55.

In addition to maintaining that Mr. Phillips' generalized concerns regarding COVID-19 do not present an extraordinary and compelling reason to release him, the government emphasizes the severity of Mr. Phillips's crimes demonstrate he would continue to present a danger to the community if released.  The government highlights the fact that Mr. Phillips has admitted to possessing thousands of images and videos of young children and infants being raped, distributed hundreds of these images and videos to others, and discussed his desire to kidnap and rape a child as young as five years old. Dkt. 55.

Finally, the government outlines the steps being taken by the BOP at FCI Seagoville and other BOP facilities to control and contain the virus.  Dkt. 50.

## II. DISCUSSION

### A.    Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13.  The policy statement clarifies

that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  USSG § 1B1.13 cmt. n.1.  The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take.  USSC § 1B1.13 cmt. n.4.

Mr. Phillips's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release."  As relevant to Mr. Phillips' motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

### B.      Exhaustion of Administrative Remedies

It is undisputed that Mr. Phillips has met the exhaustion requirement.  On May 12, 2020, Mr. Phillips submitted a formal request to the warden of his facility seeking compassionate release, which request was followed by an email to the warden from his attorney.  Dkt. 51, Ex. A and B.  There is no evidence in the record that Mr. Phillips received a response.

The Government agrees this statutory prerequisite has been met and that Mr. Phillips' request to the Court for compassionate release is timely as more than 30 days have passed since Mr. Phillips submitted his request for release.  Dkt. 55.

### C.      Extraordinary and Compelling Circumstances

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Phillip's term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994.  That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific

examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
> (3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>  (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence. Specifically, Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

Mr. Phillips argues that he has presented extraordinary and compelling reasons for the Court to grant him relief in light of the COVID-19 pandemic itself, the recent outbreak at the institution where he is housed given the number of inmates and staff who have now contracted the virus, as well as his escalated risk of developing serious complications if he contracts the virus, given his age.  He asserts that these factors,

ORDER  - 7

combined with overcrowding at FCI Seagoville, create a heightened risk of not only becoming infected, but also suffering from COVID-related complications, which could include death.  Dkt. 50.

Mr. Phillips acknowledges he is in normal health for a 63-year-old man, with no chronic health issues or conditions.  Dkt. 50.

Mr. Phillips argues the BOP is unable or unwilling to protect those individuals in its custody and sets forth in detail the ways in which he asserts the BOP is failing to adequately address the COVID-19 pandemic in its facilities.  Dkt. 50, Ex. C.

In response, the government argues Mr. Phillips has not met the standard for a reduction in his sentence, and that he has failed to meet his burden of showing extraordinary and compelling reasons for compassionate release to be granted.  The government indicates Mr. Phillips' generalized fear of contracting COVID-19 while incarcerated at FCI Seagoville is insufficient to meet the criteria for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release.  Dkt. 55.

The government responds to Mr. Phillips' contention the BOP's response to the COVID-19 pandemic has been inadequate and states he has not made any showing that the facility at which he is housed is unequipped to provide appropriate medical treatment were he to become sick.  Responding to Mr. Phillips' contention that the BOP is unable to sufficiently manage the pandemic to keep him and other inmates safe, the government sets forth in detail the steps the BOP is taking to combat and control the spread of COVID-19 in its facilities, including at FCI Seagoville.  The government argues that Mr. Phillips' speculative fear of contracting the virus is insufficient to justify compassionate release, as the Bureau of Prisons has taken and will continue to take the necessary steps to safely house inmates during the pandemic.  Dkt. 55.

The government posits that it is not clear that Mr. Phillips would face less of a risk of contracting the virus if he were to be released, as COVID-19 presents a serious

ORDER  - 8

health risk to everyone, including incarcerated individuals, and therefore there is no basis for concluding that Mr. Phillips confronts a significantly greater risk while in custody than what he would in the community if he were to be released.  Dkt. 55.

The government maintains Mr. Phillips' reliance on the case of *United States v. Pippin,* 2:16-cr-00266-JCC, is misplaced as Mr. Phillips, who is in good health, can be distinguished from Mr. Pippin, who suffered from pancytopenia, a blood condition that he argued rendered him particularly susceptible to COVID-19, and the fact Mr. Pippin was housed at FCI Lompoc, which has been an epicenter of a major outbreak of the virus. The government argues the other cases Mr. Phillips relies upon are equally distinguishable as they involve inmates with serious medical risk factors that contrast with Mr. Phillips' relatively good health.  Dkt. 55.

Replying to the government, Mr. Phillips argues his age is part of his overall health and that though he is currently in good health, he may have more difficulty recovering from a COVID-19 infection than would a younger adult.  He argues that, therefore, his age alone is a "health condition" that makes him particularly vulnerable to complications, including death.  Mr. Phillips asserts this factor, combined with his current living situation in a confined prison environment where inmates and staff have tested positive for the infection, renders him at high risk of not only contracting the disease, but also suffering from devastating complications, constituting grounds for the Court to release him.  Dkt. 57.

Finally, Mr. Phillips disputes the government's argument that Mr. Phillips is no more at risk inside the institution than he would otherwise be living in the community. He contrasts his current environment where he is unable to maintain social distancing in overcrowded, unsanitary conditions, with a home environment where he would be able to follow the CDC recommendations for preventing a COVID-19 infection.

While some courts have held, as argued by the Government, that the Sentencing Commission's policy statement on compassionate release remains controlling in the wake of the First Step Act, this Court agrees with the position taken by numerous courts that

the "old policy statement provides helpful guidance, [but]…does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Cosgrove, Id.; United States v. Rodriguez*, 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,* 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043 (RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No. 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

Considering the foregoing, what remains is Mr. Phillips' fear of contracting the disease as opposed to suffering from the same, and the concern about the BOP's ability to provide a safe environment.

In this case, the Court does not find that Mr. Phillips has demonstrated sufficient facts or evidence to warrant compassionate release.  At best, he poses generalized questions about the uncertainty of next steps for COVID-19 in FCI Seagoville.  At present, the defendant has failed to provide evidence that he has exhibited any of the risk factors noted by the CDC or that he suffers from any chronic illnesses that would aggravate this concern.

General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence as set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13. *United States v. Eberhart,* No. 13-cr-00313, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020.  Nor do such fears warrant a sentence reduction under the Court's independent assessment of the facts and circumstances presented.

**D.  Safety of Others**

Even if this Court were inclined to grant Mr. Phillips' request for compassionate release, his motion would fail as the Court finds he presents a danger to the safety of any other person or to the community.  *See* U.S.S.G. §1B1.13(2).  In making this determination, the Court looks to the nature and circumstances of the underlying offense,

the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community.  18 U.S.C. §3142(g).

Mr. Phillips' criminal conduct was serious and supported by substantial evidence as contained in the Statement of Facts in the Plea Agreement, which sets forth in detail the acts Mr. Phillips agreed he committed.  Dkt. 26.  However, Mr. Phillips argues his age, family support, lack of disciplinary infractions in custody, and motivation to continue seeking an education demonstrate that he poses no genuine threat to the community if released immediately.  Dkt. 50, Ex. B and D.

The government contends Mr. Phillips would present a grave danger to others and to the community if released early, highlighting the serious nature his crime.  Many of the over 8,000 images and over 1,100 videos of children being abused showed these children, including some infants, as they were being raped and tortured.  PSR ¶¶ 10, 11. He distributed over 300 of these images and videos to others.  PSR ¶ 12.  He engaged in online communications with other distributors of child pornography, in which he encouraged and coached others on how to sexually abuse children and discussed his desire to abduct and rape children.  He took photographs of children in bathing suits playing in a fountain in Seattle and posted them to a site known for sharing child pornography.  He instructed another pedophile not to take no for an answer if his five-year-old daughter refused to perform oral sex and coached the individual in how to convince the little girl to comply and to keep the abuse a secret by buying her gifts and taking her to an amusement park.  PSR ¶ 13.  He indicated he had tried to cease his behavior but could not stop.  Dkt. 40, p. 3.

The government asserts the outbreak of the COVID-19 pandemic does not reduce Mr. Phillips' danger to others and that his reliance on being closely monitored by Probation on supervised release is misplaced, particularly when the usual means by which probation officers are able to ensure effective monitoring are extremely restricted at this time.  Finally, the government sets forth the practical limitations of placing him on

ORDER  - 11

electronic home detention, as this method of supervision would require him to possess a cell phone, which could facilitate his return to his past criminal behavior.  Dkt. 55.

Mr. Phillips replies that location monitoring could be accomplished using a phone that does not have access to the internet, and that such monitoring has been undertaken successfully with other individuals on supervision for similar crimes.  Alternatively, Mr. Phillips suggests he be placed in a halfway house or residential reentry center where he could be sufficiently monitored, arguing the community will be adequately protected through one of these proposed methods.  Dkt. 57.

The Court agrees with the Government's analysis and sees no mitigation of this concern from the record or proposal submitted by Mr. Phillips.  Given the nature of his crimes, the danger to the community that would be experienced by his release far outweighs his generalized concerns of contracting the COVID-19 virus.

### E.  Other 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Phillips' compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court also considered the relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a).  These factors include the need for the sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner.  18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C. § 3582(c)(1)(A).

The government argues that the factors set out in § 3553(a) have not changed since Mr. Phillips was originally sentenced, that Mr. Phillips' conduct was horrifying and depraved, and that no new circumstances have arisen which merit a reduction in the Court's 108-month sentence.  Dkt. 55.

Mr. Phillips asserts the § 3553(a) factors support compassionate release.  He argues that the conduct outlined by the government was already accounted for at the original sentencing when the Court calculated his guideline range upon the application of

sentencing enhancements, which enhancements included the age of the minor being under 12 years old; the number of images being possessed or distributed; the possession of images portraying sadistic or masochistic conduct (*e.g.*, images depicting penetration or child rape); and for using a computer to possess, receive, or distribute child pornography.  Dkt. 57.

The existence of COVID-19 is a significant concern to this Court, as well as the well-being of all incarcerated individuals.  The §3553 factor analysis supported the sentence that was previously imposed and nothing in the current record warrants a modification in Mr. Phillips' sentence, and certainly not a reduction for compassionate release.

**F.  Consistency with Policy Statement**

Last, the Court must determine whether Mr. Phillips' compassionate release would be consistent with the relevant policy statement.  *See* U.S.S.G. § 1B1.13(3).  The policy requires the Court to make certain findings before granting an inmate's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  This directive has been accomplished with the detail of this Order.

**III.  CONCLUSION**

For the foregoing reasons, Defendant Greg Weldon Phillips' motion for compassionate release is **DENIED**.

DATED this 9th day of July, 2020.

_Richard A Jones_
_____
The Honorable Richard A. Jones
United States District Judge

ORDER  - 13